PHILLIP A. TALBERT
United States Attorney
MATTHEW THUESEN
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:22-cr-87 KJM |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: May 9, 2022 |
| AARON ASHCRAFT, | TIME: 9:00 a.m. |
| Defendant. | COURT: Hon. Kimberly J. Mueller |

## I. INTRODUCTION

**A.   Scope of Agreement.**

The Information in this case charges the defendant with two counts of wire fraud, in violation of 18 U.S.C. § 1343, and five counts of bank fraud, in violation of 18 U.S.C. § 1344. This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority.

**B.   Court Not a Party.**

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                1

concerning the criminal activities of the defendant, including activities that may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty pleas, and he will remain bound to fulfill all of the obligations under this Plea Agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea.

The defendant will plead guilty to Count One of the Information, which charges him with wire fraud, in violation of 18 U.S.C. § 1343, and Count Four of the Information, which charges him with bank fraud, in violation of 18 U.S.C. § 1344. The defendant agrees he is in fact guilty of those charges and that the facts set forth in the Factual Basis for Plea attached as Exhibit A ("Factual Basis") are accurate.

The defendant agrees this Plea Agreement will be filed with the Court and become part of the record of the case. The defendant understands and agrees he will not be allowed to withdraw his pleas should the Court not follow the government's sentencing recommendations.

The defendant agrees the statements he makes in signing this Plea Agreement, including the factual admissions set forth in the Factual Basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Plea Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent those rules are inconsistent with this paragraph or with this Plea Agreement generally.

#### 1.    Waiver of Indictment.

The defendant acknowledges that, under the United States Constitution, he is entitled to be

PLEA AGREEMENT                                    2

indicted by a grand jury on the charges to which he is pleading guilty and that, pursuant to Rule 7(b) of the Federal Rules of Criminal Procedure, he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charges set forth in the Information. The defendant agrees that, at a time set by the Court, he will sign a written waiver of prosecution by indictment and consent to proceed by information, rather than by indictment.

**B.     Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees that his conduct that serves as the bases for Count One and Count Four is governed by the Mandatory Victim Restitution Act, pursuant to 18 U.S.C. § 3663A(c)(1)(a)(ii), and agrees to pay restitution as follows:

$592,245 to the lender identified as Lender 1 in the Factual Basis;

$153,260 to the lender identified as Lender 2 in the Factual Basis;

$174,093.75 to the lender identified as Lender 3 in the Factual Basis;

$45,979.94 to the United States Small Business Administration; and

$779,832.55 to the company identified as Company 1 in the Factual Basis.

Additionally, the defendant agrees to pay restitution of $58,050 to the Maine Department of Labor, pursuant to 18 U.S.C. § 3663A(a)(3).

The defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. The defendant also agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

Restitution payments shall be by cashier's check or certified check made payable to the Clerk of the Court. The defendant agrees he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**C.     Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a

PLEA AGREEMENT                                                   3

fine and no fine should be imposed. The defendant understands it is his affirmative burden to prove he is unable to pay a fine and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $200 ($100 for each count of conviction) at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands this Plea Agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant violates this Plea Agreement in any way, withdraws his pleas, or tries to withdraw his pleas, this Plea Agreement is voidable at the option of the government. If the government elects to void this Plea Agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates this Plea Agreement by committing any crime or providing or procuring any statement or testimony that is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application, as set forth in this Plea Agreement, personally or through counsel, also constitutes a violation of this Plea Agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) to file any new charges that would otherwise be barred by this Plea Agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United

States Attorney's Office.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses the defendant might have to the government's decision. Any prosecutions not time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts not time-barred as of the date of this Plea Agreement. The determination of whether the defendant has violated this Plea Agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Plea Agreement, or any leads derived therefrom, should be suppressed. By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

**F.     Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that, if he fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of this Plea Agreement, and the government shall be entitled to the remedies set forth in section II.E above.

### III.  THE GOVERNMENT'S OBLIGATIONS

**A.  Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Information. The government also agrees not to bring any other charges against the defendant arising from the conduct outlined in the Factual Basis, except if this Plea Agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Guideline Calculations), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.  Recommendations.**

**1.  Incarceration Range.**

The government will recommend the defendant be sentenced to the low end of the applicable guideline range as determined by the Court.

**2.  Acceptance of Responsibility.**

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of the defendant's offense level, if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the Probation Officer in the preparation of the Presentence Investigation Report, being truthful and candid with the Probation Officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the Presentence Investigation Report or during the sentencing proceeding.

**C.  Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence the Court may impose.

## IV. ELEMENTS OF THE OFFENSES

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

**A.     Count One – wire fraud, in violation of 18 U.S.C. § 1343:**

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

**B.     Count Four – bank fraud, in violation of 18 U.S.C. § 1344(1)**

First, the defendant knowingly executed a scheme to defraud a financial institution as to something of value;

Second, the defendant did so with intent to defraud the financial institution; and

Third, the financial institution was insured by the Federal Deposit Insurance Corporation.

It is not necessary for the government to prove that a financial institution was the only or sole victim of the scheme to defraud. It also is not necessary for the government to prove that the defendant was actually successful in defrauding any financial institution. Finally, it is not necessary for the government to prove that any financial institution lost any money or property as a result of the scheme to defraud.

The defendant fully understands the nature and elements of the crimes charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence the Court can impose for a violation 18 U.S.C. § 1343 is twenty years of incarceration, a fine of up to $250,000, or twice the pecuniary gain or loss under 18 U.S.C. § 3571(d), a three-year period of supervised release, and a special assessment of $100. The maximum sentence the Court can impose for a violation of 18 U.S.C. § 1344 is thirty years of incarceration, a fine of up to $1,000,000, or twice the pecuniary gain or loss under 18 U.S.C. § 3571(d), a five-year period of supervised release, and a special assessment of $100.

By signing this Plea Agreement, the defendant also agrees the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees the restitution order is not restricted to the amounts alleged in the specific counts to which he is pleading guilty. The defendant further agrees, as noted above, he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that, if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years of imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant understands the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further

understands the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.     Guideline Calculations.**

The government and the defendant agree there is no material dispute as to the following sentencing guidelines variables and, therefore, stipulate to the following:

    **1.     Count One – Wire Fraud**

Base offense level: 7, pursuant to U.S.S.G. § 2B1.1(a)(1).

Specific offense characteristic: Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), 14 levels are added because the intended loss with respect to Count One—approximately $1.2 million, when accounting for relevant conduct—is more than $550,000 but less than $1,500,000.

    **2.     Count Four – Bank Fraud**

Base offense level: 7, pursuant to U.S.S.G. § 2B1.1(a)(1).

Specific offense characteristic: Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), 14 levels are added because the loss with respect to Count 4—approximately $780,000, when accounting for relevant conduct—is more than $550,000 but less than $1,500,000.

Chapter 3 adjustment: Pursuant to U.S.S.G. § 3B1.3, 2 levels are added because the defendant abused a position of trust.

    **3.     Other Adjustments**

Acceptance of responsibility: 3 levels are subtracted from the combined offense level if the defendant pleads guilty, accepts responsibility for his offenses, and the offense level is above 16, as provided in paragraph III.B.2 above.

The parties estimate, but do not stipulate, to the following:

Combined offense level: Counts One and Four will be grouped under U.S.S.G. § 3D1.2(d), which results in an aggregated loss amount of approximately $1.98 million. Such loss amount corresponds to an increase of 16 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(I). Consequently, the combined offense level will be 25.

Adjusted offense level: 22, if the defendant receives a 3-level reduction for acceptance of responsibility.

Criminal history: Category I.

Sentencing range: 41-51 months. The defendant understands that, if the criminal history category and/or the adjusted offense level differs from the parties' estimate, his sentencing range may differ.

The parties agree they will not seek or argue in support of any other specific offense

PLEA AGREEMENT      9

characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except the government may move for a departure or an adjustment based on the defendant's post-plea obstruction of justice (§ 3C1.1). Both parties agree not to move for, or argue in support of, any other departure from the Sentencing Guidelines.

The defendant is free to make any arguments with respect to a variance from the guidelines under 18 U.S.C. § 3553(a). The government reserves its right to oppose any such variance and agrees to recommend a sentence at the low end of the applicable guideline range as determined by the Court.

### VII.  WAIVERS

#### A.  Waiver of Constitutional Rights.

The defendant understands that, by pleading guilty, he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statute of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

#### B.  Waiver of Appeal and Collateral Attack.

The defendant understands the law gives the defendant a right to appeal his guilty pleas, convictions, and sentence. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty pleas, convictions, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum penalties for the offenses to which he is pleading guilty. The defendant understands this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's convictions and guilty pleas, including arguments that the either of the statutes to which the defendant is pleading guilty is unconstitutional, and any and all claims that the Factual Basis is insufficient to support the defendant's pleas of guilty. The defendant understands this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's convictions and guilty pleas, including arguments that either of the statutes to which the

defendant is pleading guilty is unconstitutional, and any and all claims that the Factual Basis is insufficient to support the defendant's pleas of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands these circumstances occur infrequently and in almost all cases this Plea Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty pleas, convictions, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the charges to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

**C.    Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

**D.    Waiver of Venue.**

The defendant understands that the law gives the defendant a right to be prosecuted in the district where the offense was committed. The defendant understands that, by pleading guilty, he is waiving that right as to the crimes charged in the Information.

**E.    Impact of Plea on Defendant's Immigration Status.**

The defendant recognizes that pleading guilty may have consequences with respect to his

PLEA AGREEMENT                                           11

immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms he wants to plead guilty regardless of any immigration consequences his plea may entail, even if the consequence is his automatic removal from the United States.

### VIII. ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

### IX. APPROVALS AND SIGNATURES

**A.   Defense Counsel:**

I have read this Plea Agreement and have discussed it fully with my client. This Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated: April 22, 2022

*R. Barbour*

RACHELLE BARBOUR, ESQ.
Attorney for Defendant

//
//
//
//
//
//
//

**B.     Defendant:**

I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 04/21/2022

AARON ASHCRAFT
Defendant

**C.     Attorney for United States:**

I accept and agree to this Plea Agreement on behalf of the government.

Dated: 4/26/2022

PHILLIP A. TALBERT
United States Attorney

MATTHEW THUESEN
Assistant United States Attorney

PLEA AGREEMENT                               13

EXHIBIT "A"
Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

During the relevant time period:

Aaron Ashcraft lived in Sacramento, California.

**Paycheck Protection Program Fraud**

The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

To obtain a PPP loan, a qualifying business was required to submit a PPP loan application that was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were typically required to provide documentation showing their payroll expenses.

A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100 percent guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

Lender 1 was an independent finance provider for small businesses based in California.

Lender 2 was an independent finance provider for small businesses based in Florida.

Lender 3 was an independent finance provider for small businesses based in California.

Bank 1 was financial institution based in Florida, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

Lender 1, Lender 2, Lender 3, and Bank 1 were authorized by the SBA to participate as PPP lenders to small businesses.

From approximately May 2020 through April 2021, Ashcraft submitted and caused to be submitted at least seven fraudulent PPP loan applications in the names of purported entities to various SBA-approved PPP lenders, including Lender 1, Lender 2, Lender 3, and Bank 1.

In submitting the applications, Ashcraft intended to defraud the lenders. Some, but not all, of the loan requests were funded. In total, Ashcraft's applications requested over $1.2 million in PPP loans, and Ashcraft received via interstate wires over $920,000, as described below:

| Entity | Lender | Approx. Application Date | Approx. Amount Sought | Approx. Date Funded | Amount Funded |
|---|---|---|---|---|---|
| Aarox, Inc. | Lender 1 | 5/21/2020 | $44,785 | 5/27/2020 | $44,785 |
| AACIIS Services | Lender 1 | 5/27/2020 | $81,164 | 6/3/2020 | $81,165 |
| Eros Productions | Lender 1 | 6/1/2020 | $163,034 | 6/18/2020 | $163,035 |
| Booktech Enterprises | Lender 1 | 6/7/2020 | $303,261 | 6/30/2020 | $303,260 |
| Booktech Enterprises | Bank 1 | 6/11/2020 | $307,100 | N/A | $0 |
| Tech 1 Engineering | Lender 2 | 2/5/2021 | $153,260 | 2/22/2021 | $153,260 |
| Tech 1 Engineering | Lender 3 | 4/17/2021 | $174,093.75 | 4/21/2021 | $174,093.75 |

In the PPP loan applications, Ashcraft falsely represented, among other things, that each purported business had employees and an average monthly payroll expense.

Additionally, to support the PPP loan applications, Ashcraft submitted to the lenders fabricated records, including IRS forms, business checking account statements, and payroll summaries.

**Embezzlement**

From approximately December 2007 through June 2020, Ashcraft worked for a street sweeping company located in Sacramento, California—Company 1. Ashcraft served in multiple positions at Company 1, including as the chief financial officer. Ashcraft was responsible for, among other things, accounting, financial reporting, and preparing taxes.

PLEA AGREEMENT                          A-2

Company 1 had at least two business credit card accounts held at Bank 2, which was a financial institution insured by the FDIC. The credit card accounts ended 3519 and 9059. The accounts had multiple authorized users with separate credit card account numbers. Ashcraft was not an authorized user of either account, but he had access to the credit card numbers of authorized users.

Beginning in or around September 2017, and continuing through in or around June 2020, Ashcraft carried out a scheme to defraud Bank 2 by making unauthorized charges using credit card numbers of authorized users of Company 1's Bank 2 business accounts to make payments to accounts he controlled, including an account held at Bank 3 ending in 6657 ("Bank 3 Account"), an account held at Bank 4 ending in 5236 ("Bank 4 Account"), and an account held at Bank 5 ending in 4409 ("Bank 5 Account"), as well as online payment accounts (each an "Online Account" and, collectively, "Online Accounts").

Examples of Ashcraft's fraudulent charges include the following:

| Company 1 Bank 2 Account | Approx. Charge Date | Approx. Amount of Charge | Ashcraft Receiving Account |
|---|---|---|---|
| 3519 | 9/13/2017 | $1,188 | Online Payment Account |
| 3519 | 11/6/2018 | $3,656.25 | Online Payment Account |
| 3519 | 7/3/2019 | $4,655 | Online Payment Account |
| 9059 | 12/3/2019 | $4,821.25 | Online Payment Account |
| 3519 | 12/4/2019 | $4,829.90 | Online Payment Account |
| 3519 | 12/6/2019 | $5,416 | Online Payment Account |
| 3519 | 12/17/2019 | $6,942.67 | Online Payment Account |
| 3519 | 12/18/2019 | $7,766.25 | Online Payment Account |
| 9059 | 2/4/2020 | $3,500 | Bank 3 Account |
| 3519 | 2/11/2020 | $6,455.20 | Bank 4 Account |
| 9059 | 3/23/2020 | $5,875 | Bank 4 Account |

PLEA AGREEMENT                                A-3

| 3519 | 5/9/2020 | $3,162.42 | Bank 5 Account |
| 9059 | 5/18/2020 | $3,480.50 | Bank 5 Account |
| 9059 | 5/25/2020 | $3,850.25 | Bank 4 Account |
| 3519 | 6/16/2020 | $3,256.18 | Bank 5 Account |

In total, through his scheme, Ashcraft fraudulently obtained at least approximately $780,000 from Bank 2.

### Unemployment Fraud

In or around July 2020, Ashcraft submitted an application to the Maine Department of Labor for Pandemic Unemployment Assistance, claiming that he was self-employed and unable to work due to COVID-19. In his application, Ashcraft falsely represented that he resided in Old Orchard Beach, Maine, and his county of employment was York, Maine, when, in fact, he resided in California and did not work in Maine.

To support his unemployment application, Ashcraft submitted a falsified Schedule C (Form 1040) for tax year 2019. In it, Ashcraft falsely claimed that he operated a business in Maine that received over $160,000 in income and made a net profit of over $66,000.

Based on his fraudulent application, the Maine Department of Labor paid Ashcraft unemployment compensation of over approximately $31,000 in 2020 and $27,000 in 2021.

*I have read and carefully reviewed with my attorney this Factual Basis for Plea. I agree that it is true and correct. I also agree that, if this matter proceeded to trial, the United States could establish each of the facts contained within this Factual Basis for Plea beyond a reasonable doubt, and that those facts satisfy the elements of the offenses to which I am pleading guilty. Additionally, I agree that this Factual Basis for Plea is a summary made for the purpose of providing the Court with a factual basis for my guilty pleas, and it does not include all of the facts known to me concerning criminal activity in which I and others engaged.*

Dated: 04/21/2022

_____
AARON ASHCRAFT
Defendant

PLEA AGREEMENT                                           A-4